[No. F012376. Fifth Dist. June 29, 1990.]

DENNIS OSBURN, Plaintiff and Appellant, v.
DEPARTMENT OF TRANSPORTATION, Defendant and
Respondent.

COUNSEL

Farmer & Joy and C. Michael Farmer for Plaintiff and Appellant.

Joseph A. Montoya, Joseph C. Easley, Charles E. Spencer, William M. McMillan and James E. Livesey for Defendant and Respondent.

OPINION

THAXTER, J.—This case requires us to review a seldom litigated provision of the Uniform Relocation Assistance and Real Property Acquisition Policy Act of 1970, as amended (hereinafter Act). (42 U.S.C. § 4601 et seq.) On the peculiar facts presented here we hold that appellant Dennis Osburn, although found to be a "displaced person" under the Act, is not entitled to "Last Resort Housing" benefits because he was not required to move from his dwelling and has no need to replace his residence.

### FACTS AND PROCEDURAL BACKGROUND

Osburn first moved to his home located at 37038 Highway 41, Coarsegold, California, in 1967. On October 1, 1986, respondent California Department of Transportation (Department), in connection with plans for the realignment of Highway 41, made Osburn a written offer to purchase a portion of his property. Osburn rejected the initial proposal because the offer did not include his residence. A second written offer, including an offer to purchase the residence, was made on January 23, 1987. The plan to realign Highway 41 was part of a federally funded highway project. Thus, the Department's acquisition of property in connection with the project is governed by the federal Act and its accompanying regulations. (See Gov. Code, § 7267.8, subd. (b).) The January 23, 1987, offer informed Osburn, "[y]ou will *not* be eligible to receive any relocation payment until the State has completed the purchase of the property or has the right of possession of the property *and* you have moved." (Italics original.)

On January 24, 1987, Osburn vacated his home and moved to a motel. His wife remained at the residence. Three days later, Osburn returned to the residence where he stayed until moving to a motor home on adjoining property on February 5, 1987. His wife continued to live at the residence.

On February 9, 1987, the Department informed Osburn in writing that his property would not be needed for the project. That letter did not state

Osburn would no longer be eligible for relocation benefits, but he was so informed in later letters from the Department.

Osburn appealed the Department's decision to deny him relocation assistance. From May 18, 1987, through June 24, 1988, several hearings were held by the Department's relocation assistance appeals board (Board) on various issues raised by Osburn's appeal. The Board issued at least three separate, written recommendations following hearings. All of the recommendations were undated.

The Board first recommended as follows: ". . . [T]he Board finds that:

"1. [Osburn] became entitled to RAP [Relocation Assistance Program] benefits at the initiation of negotiations and by letter dated January 23, 1987.

"2. [Osburn] vacated residence January 24, 1987, and except for a brief return visit, remained absent from the residence at until the appeal hearing on May 18, 1987;

"3. [Osburn] was notified in writing *after* he moved from the property that he would be displaced for a project, contrary to Federal regulations; and

"4. [Osburn] was not explicitly informed until March 30, 1987, that his RAP entitlement was withdrawn, contrary to Departmental procedures.

"Therefore, [Osburn] is entitled to full relocation benefits otherwise in accord with Federal law and Departmental procedures. This decision is technical in nature and grants [Osburn] benefits because the Department's attempt to rescind relocation benefits was not in accord with Federal law or Departmental procedure."

Its second recommendation included the following: "There is no basis for restricting [Osburn]'s eligibility to receive Relocation Assistance Benefits. As a result, the Board recommends that a reaffirmation be made that [Osburn] is a fully eligible 180-day owner-occupant. Since [Osburn] has experienced a delay in eligibility clarification, the Board recommends that [Osburn]'s applicable Relocation Assistance program time requirements (i.e., one year to purchase and occupy a decent, safe and sanitary replacement property, etc.) commence with [Osburn]'s actual receipt of the Director of Transportation's second appeal decision letter.

"Payment shall be made by the Department upon [Osburn]'s compliance with all applicable statutory and regulatory requirements which are prerequisite to receiving Relocation Assistance Benefits."

The Board's final recommendation denied Osburn last resort housing (LRH) benefits by stating as follows: "Last Resort Housing as covered in the Federal Rules and Regulations, 49 CFR Part 25-Subpart G-601(a), states that 'a person cannot be required to move from his or her dwelling unless at least one comparable dwelling is made available to that person.' In this instance [Osburn] was not, and is not, being required to move at all, as there is *no taking* of any of [Osburn]'s property.

"Therefore, as [Osburn] is not being required to move there is no justification in granting Last Resort Housing to [Osburn]. He has one year from March 14, 1988 to acquire a new residence and to qualify for standard replacement housing payments for 180 day homeowner-occupants (49 CFR Section 25.401)."

The Department apparently adopted the recommendations of the Board and awarded Osburn a "replacement housing payment" pursuant to federal regulations. (49 C.F.R. § 25.401 (1987).) Based on the last recommendation, the Department denied Osburn's claim for LRH benefits.

Osburn sought judicial review of the Department's decision denying him LRH benefits. The trial court sustained the Department's demurrer without leave to amend. The order was later modified to read: "[Osburn] now seeks Last Resort Housing for replacement housing. [Department] has not and is not going to take [Osburn]'s property. Since there cannot, as a matter of law, be 'replacement' housing unless it is going to 'replace' something, [Osburn] is not entitled to Last Resort Housing benefits. Since there has been no taking and [Osburn] still has his residence and property, there is nothing to replace. If there is nothing to replace (nothing taken), there can be no replacement.

"At most, [Osburn] is entitled to RAP benefits for the period from January 24, 1987, to March 30, 1987.

"The decision of the Department of Transportation is supported by substantial evidence.

"1. The demurrer is sustained without leave to amend . . . ."

On this appeal Osburn challenges the trial court's order sustaining demurrer and the court's subsequent order denying Osburn's motion to set aside and vacate the first order.

DISCUSSION

I. *Standard of Review*

Code of Civil Procedure section 1094.5 provides the framework by which an aggrieved party to an administrative proceeding may seek judicial review of the final order of an administrative agency. The statute focuses on the review by the trial court. It provides in relevant part: "(b) The inquiry [in administrative mandamus proceedings] shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

Osburn argues the decision denying him LRH benefits constitutes an abuse of discretion, not because it lacks evidentiary support but because the Department refuses to follow the regulations which Osburn claims establish his entitlement to LRH benefits. Respondent argues its decision does not violate the governing regulations. Neither party disputes the Department found Osburn to be a "displaced person" as defined in the regulations.[1]

■ Discretion is abused when an agency has not proceeded in the manner required by law. (Code Civ. Proc., § 1094.5, subd. (b).) When review of an administrative determination by administrative mandamus is sought and the trial court has applied an abuse of discretion standard, the scope of review is the same in the appellate court as it was in the superior court. The appellate court must determine whether the administrative agency exercised its discretion to an end or purpose not justified by all the facts and circumstances being considered. (*Schmitt* v. *City of Rialto* (1985) 164 Cal.App.3d 494, 501 [210 Cal.Rptr. 788]; *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 24 [112 Cal.Rptr. 872].)

■ Two rules govern our review. Any factual determinations made by the administrative agency are binding on the appellate court if supported by substantial evidence. (*Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386 [146 Cal.Rptr. 892].) Secondly, when the issues involve the proper application of a statute or administrative regulation, the trial court's legal conclusions are not binding on the appellate court. (*Alba* v. *Los Angeles Unified School Dist.* (1983) 140 Cal.App.3d 997, 1005 [189

[1] Although we have grave doubts about Osburn's status as a "displaced person" under the undisputed facts, respondent has not challenged that finding either in the trial court or on appeal. Accordingly, we will necessarily accept that finding as having been made properly.

Cal.Rptr. 897]; *Lewin* v. *St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d at p. 387; *Collins* v. *Board of Medical Examiners* (1972) 29 Cal.App.3d 439, 444 [105 Cal.Rptr. 634].)

II. *There Was No Abuse of Discretion in the Denial of Last Resort Housing Benefits to Osburn*

Appellant claims he is entitled to LRH benefits as provided by 49 Code of Federal Regulations, section 25.601 et seq. (1987). He argues LRH benefits entitle him to an amount equal to the difference between the replacement housing payment of $15,000 awarded by the Board and the cost of a comparable replacement dwelling. (His own residence is appraised at $62,950.) (See 42 U.S.C. § 4623; 49 C.F.R. § 25.401 et seq. (1987).) He argues the court's conclusion that there is no "displacement dwelling" because Osburn's home was not acquired is illogical. According to Osburn, since he is a "displaced person," it follows there must be a "displacement dwelling." When viewed in light of the statutory and regulatory provisions for LRH benefits, and the obvious intent behind those provisions, Osburn's claim takes on a certain surrealistic quality.

The statutory basis for LRH benefits is 42 United States Code, section 4626, which provides: "(a) If a program or project undertaken . . . with Federal financial assistance cannot proceed on a timely basis because comparable replacement dwellings are not available . . . , the head of the displacing agency may take such action as is necessary or appropriate to provide such dwellings by use of funds authorized for such project. The head of the displacing agency may use this section to exceed the maximum amounts which may be paid under sections 4623 and 4624 of this title [$15,000] on a case-by-case basis for good cause as determined in accordance with such regulations as the head of the lead agency shall issue.

"(b) No person shall be *required to move from his dwelling* on account of any program or project undertaken . . . with Federal financial assistance, unless the head of the displacing agency is satisfied that comparable replacement housing is available to such person." (Italics added.)

The regulations governing LRH benefits provide as follows: "Section 25.601. Applicability. [¶] (a) . . . A person cannot be *required to move from his or her dwelling* unless at least one comparable replacement dwelling is made available to the person. Whenever an Agency determines that a replacement housing payment under Subpart E would not be sufficient to provide a comparable replacement dwelling on a timely basis to the person, the Agency is authorized to take appropriate measures under this subpart to provide such a dwelling . . . ." (Italics added.)

"Section 25.602. Methods of providing replacement housing. [¶] Agencies shall have broad latitude in implementing this subpart, but implementation shall be on a reasonable cost basis. The methods of providing last resort housing include, but are not limited to:

". . . . . . . . . . . . . . . . .

"(d) A replacement housing payment in excess of the limits set forth in § 25.401 or § 25.402. . . ."

An analogous state statute, Government Code section 7264.5,[2] has similar provisions.

■ Clearly the intent of LRH benefits is to ensure no person is forced to move from his residence as the result of a governmental project unless replacement housing is available. (See *Garcia* v. *Anthony* (1989) 211 Cal.App.3d 467, 472-473 [259 Cal.Rptr. 393].) In *Garcia*, the court stated Government Code section 7264.5 "implements the additional but basic legislative concern that the state shall not through its exercise of eminent domain, render any person homeless." (*Id.* at p. 475.) The name given the benefits itself—"last resort housing"—suggests the benefits under 49 Code of Federal Regulations, section 25.601 (1987) are intended for situations when the other benefits under the Act have not led to a new home for the "displaced person" and the agency must force eviction of the acquired dwelling. The variety of possible courses of actions allowable under the section to ensure a displaced person has a comparable dwelling available, including actions other than the payment of money, is also indicative of the legislative intent.

LRH benefits are available to all displaced persons, but only when the circumstances they are intended to correct are present. The trial court and the Board correctly concluded those circumstances are not present here. Osburn is not being forced to move. He will not be homeless as a result of governmental action. He has a comparable dwelling available to him—his own residence which he retains. The Board's "technical" ruling that Osburn is a "displaced person" does not require the Department or the courts to ignore the actuality that Osburn was not required to move and has retained his residence. Osburn's petition failed to show any abuse of discretion by the

---

[2] The California Relocation Assistance Law (Gov. Code, § 7260 et seq.) was passed to bring California into compliance with the federal scheme and to extend benefits to persons displaced by purely state or local acquisitions. The state statute closely parallels its federal model. (*Peter Kiewit Sons' Co.* v. *Richmond Redevelopment Agency* (1986) 178 Cal.App.3d 435, 443 [223 Cal.Rptr. 728].)

Department, and the trial court properly sustained the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. The respondent is awarded its costs on appeal.

Stone (W. A.), Acting P. J., and Dibiaso J., concurred.

Appellant's petition for review by the Supreme Court was denied September 12, 1990.