[No. H032222. Sixth Dist. Feb. 10, 2009.]

COUNTY OF SANTA CRUZ, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF SANTA CRUZ, Defendant and
Respondent;
GEORGE B. JACK, Real Party in Interest and Respondent.

1578

**COUNSEL**

Dana McRae, County Counsel, and Betsy Allen, Assistant County Counsel, for Plaintiff and Appellant.

Jones & Mayer, Martin J. Mayer and Paul R. Coble for California State Sheriffs' Association et al. as Amicus Curiae on behalf of Plaintiff and Appellant.

Mastagni, Holstedt, Amick, Miller, Johnson & Uhrhammer, Christopher W. Miller and William P. Creger for Real Party in Interest and Respondent.

## OPINION

**RUSHING, P. J.**—The Santa Cruz County Sheriff, Steve Robbins (the Sheriff), demoted Sergeant George B. Jack for his conduct during an internal investigation of a female subordinate's gender harassment claim against him. Jack appealed to the Civil Service Commission of Santa Cruz (the Commission), which reinstated Jack's sergeant rank, and reduced the penalty to a 30-day suspension. The Sheriff filed a petition for writ of mandate, and requested the superior court vacate the Commission's order. (Code Civ. Proc., § 1094.5.) The trial court denied the petition, finding the Commission did not abuse its discretion.

On appeal, the Sheriff asserts we should reverse the trial court's decision, because the Commission abused its discretion in reducing Jack's penalty and reinstating his sergeant rank.[1]

### STATEMENT OF THE FACTS AND CASE

In 2005, Santa Cruz County Correctional Officer Diana Holland complained to Chief Deputy Don Bradley about how her supervisor, Sergeant George B. Jack, was treating her. Holland told Chief Bradley that Jack publically and privately belittled and intimidated her, and treated her more harshly than male officers in his command. Holland said that although she requested work from Jack, he would not give her any, and that her male colleagues had plenty. Holland told Bradley that on the first day she met Jack, he told her he had sent the last female officer he supervised back to work at the jail because she did not work out. Jack told Holland that if she did anything wrong "her ass is grass and I'm the lawnmower."

On December 21, 2005, Bradley met with Jack and told him of Holland's allegations, and that he was going to begin an investigation. Bradley ordered Jack not to contact Holland or discuss the allegations with her.

A few hours after his conversation with Bradley, during which he was ordered not to talk to Holland, he sat next to her during a prescheduled holiday lunch. Jack asked Holland if she was happy in her job, and told her

---

[1] The California Sheriffs' Association and California Police Chief's Association filed an amicus curiae brief in this case urging this court to reverse the trial court, and find the Commission abused its discretion in reinstating Jack to the supervisory rank of sergeant in the Santa Cruz County Sheriff's Department.

they should talk about it. Holland did not respond to Jack's question. After lunch, while Holland was on her way back to the office, Jack called her three times on her cell phone. On the third call, Jack left a message on her voicemail, stating: "Diana, where are you? I'm coming out to Live Oak. I want to talk to you."

When Jack arrived at Holland's office, he ordered her to come with him. When they were outside the office, Jack said, "we are going for a ride." Instead of driving the car, the two sat in the car in the parking lot for nearly three hours. Jack was agitated and upset during the meeting, and was very hostile towards her. He told her, "[w]e are going to talk about respect and loyalty and about what it means when a subordinate goes behind her supervisor's back to talk to that supervisor's supervisor, and that is what we call backstabbing." Jack ordered Holland not to tell anyone about the conversation, and not to talk to Bradley anymore.

After the car meeting, Jack called Bradley and left him a message on his voicemail, stating, "Diana approached me and asked for a few minutes. I ended up giving her a few hours. I was mostly a good listener. We had a good conversation and I think we've worked this all out."

The next day, Bradley called Holland to confirm the meeting with Jack. When Bradley described Jack's voicemail message, Holland stated the message was "a flat out lie."

Based on the discrepancy in the two accounts of the car meeting, as well as previous complaints by female officers under Jack's command, Bradley recommended that internal affairs conduct an investigation into Jack's conduct, including whether Jack had violated policies relating to insubordination, hostile work environment and conduct unbecoming an officer.

An internal affairs investigation was completed on June 30, 2006. The internal affairs report contained findings that Jack's conduct violated many of the county's policies, including false statements (Sheriff's Officer Policy C.02.O); insubordination (Civil Service Rule 130, § XIV.B.5); willful disobedience (Civil Service Rule 130, § XIV.B.12); and conduct unbecoming an officer (Sheriff's Officer Policy C.02.E.1).

As a result of the findings of the internal affairs investigation, on October 12, 2006, the Sheriff ordered Jack demoted from sergeant to deputy sheriff. The Sheriff and Bradley believed the demotion was appropriate in this case, because in their view, supervisors who have a reputation for dishonesty and/or insubordination, and who treat subordinates poorly cannot effectively lead others.

Jack appealed his demotion to the Commission. The Commission held an administrative hearing on March 22 and 23, 2007. At the end of the hearing, the Commission made the following statement: "[T]he Civil Service Commission finds that the preponderance of the evidence does not establish just cause for Sergeant Jack's demotion from Sergeant to Deputy Sheriff, but does justify a 30-day suspension with no back pay." The county requested that the Commission issue findings in support of it decision. The Commission issued a written statement of decision, but it did not include any findings or basis for its decision.

On March 28, 2007, the county filed a "Petition for Reconsideration" with the Commission requesting that the Commission issue findings supporting its decision. On April 19, 2007, the Commission denied the petition.

On May 7, 2007, the county filed a "Petition for Alternative Writ of Mandate" with the Santa Cruz Superior Court asking that the Commission be ordered to issue findings in support of its decision. The court ordered the Commission to set aside its decision and conduct a new administrative hearing after which the Commission would issue findings.

On May 16, 2007, the Commission issued a new decision in which it did not make specific factual findings, but it did find that the evidence presented showed that Sergeant Jack made false statements in violation of Santa Cruz Sheriffs Department Policy C.02.O; was insubordinate in violation of Civil Service Rule section XIV.B.5; and was willfully disobedient in violation of Civil Service Rule section XIV.B.12. The Commission did not state why it decided to reinstate Jack to the rank of sergeant, and reduce his penalty to a 30-day suspension.

On June 19, 2007, the county filed a "Peremptory Writ of Mandate" with the Santa Cruz County Superior Court seeking a reversal of the Commission's decision to reinstate Sergeant Jack. The court denied the petition based on its finding that the Commission did not abuse its discretion in reinstating Jack to sergeant. This appeal ensued.

### DISCUSSION

The county asserts on appeal that the Commission abused its discretion when it reinstated Sergeant Jack to the supervisory position of sergeant within the Sheriff's office.

We review the administrative determination of the Commission under the same standard of abuse of discretion applied by the trial in its review of the "Petition for Writ of Administrative Mandamus." (*Talmo v. Civil Service Com.*

(1991) 231 Cal.App.3d 210, 227 [282 Cal.Rptr. 240].) Reversal is warranted when the administrative agency abuses its discretion, or exceeds the bounds of reason. While the agency has discretion to act, that discretion is not unfettered. (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217–218 [124 Cal.Rptr. 14, 539 P.2d 774].)

"In considering whether [abuse of discretion] occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly v. State Personnel Bd., supra,* 15 Cal.3d at p. 218.) The public is entitled to protection from unprofessional employees whose conduct places people at risk of injury and the government at risk of incurring liability. (*County of Santa Clara v. Willis* (1986) 179 Cal.App.3d 1240, 1252 [225 Cal.Rptr. 244].)

■ In the present case, the Sheriff asserts the Commission abused its discretion in reinstating Jack's supervisory sergeant rank. Specifically, the Sheriff argues the present case is akin to *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 716 [34 Cal.Rptr.3d 1] (*Kolender*), in which the Court of Appeal held the San Diego County Civil Service Commission abused its discretion by reinstating a sheriff deputy who was dismissed for lying to protect a colleague who had abused an inmate. In *Kolender*, the deputy appealed his demotion to the civil service commission, which found the sheriff had proved all the allegations of misconduct against the deputy, but reinstated the deputy nonetheless, noting that the termination was excessive. The Court of Appeal reversed, and reinstated the sheriff's termination penalty, stating: " 'A deputy sheriff's job is a position of trust and the public has a right to the highest standard of behavior from those they invest with the power and authority of a law enforcement officer. Honesty, credibility and temperament are crucial to the proper performance of an officer's duties. Dishonesty is incompatible with the public trust.' [Citation.]" (*Kolender, supra,* 132 Cal.App.4th at p. 721.)

The employee misconduct, penalty and procedure of *Kolender* are similar to the present case, and the same rationale should apply. Here, Jack created a hostile work environment for a female subordinate. When she complained about Jack's treatment, and an investigation was initiated, Jack disobeyed a direct order not to contact her. When Jack did contact her, he further intimidated her, told her not to tell anyone about the meeting, and then lied to his supervisor about it. When disciplined, while not terminated as the deputy was in *Kolender*, he was demoted from the rank of sergeant to deputy sheriff. Finally, when he appealed the demotion, the Commission found the Sheriff's

allegations of misconduct were true, but as in *Kolender*, inexplicably reduced the penalty from demotion to a 30-day suspension with no backpay. As a result of the appeal, the Commission reinstated Jack's sergeant rank.

Jack's dishonesty and disobedience of the order not to contact Holland during the internal investigation is no less serious or important than the deputy's lies to protect his colleague in *Kolender*. The honesty and integrity of a sergeant in the Sheriff's department is paramount to the public safety and trust, and breach of that trust is cause for grave concern. The fact that the dishonesty in this case related to an internal employment investigation rather than an investigation of inmate abuse does not make the misconduct any less troubling. Dishonesty on the part of a sergeant in the Sheriff's department is a breach of public trust, and ultimately affects the Sheriff's ability to effectively serve the public.

The rationale that public trust is inherent in the role of a law enforcement officer, the breach of which is grounds for employee discipline was applied in *Hankla v. Long Beach Civil Service Com.* (1995) 34 Cal.App.4th 1216 [40 Cal.Rptr.2d 583] (*Hankla*), in which the Court of Appeal also reversed a decision by the civil service commission to reinstate a police officer based on the finding the officer's conduct harmed the public service. The *Hankla* court opined that law enforcement officers " 'are the guardians of the peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them.' [Citation.]" (*Hankla, supra*, 34 Cal.App.4th at p. 1224.)

Here, there is no question Jack's dishonesty and disobedience undermined the trust inherent in the supervisory position of sergeant, and caused harm to the public service. Most notable in the present case is the fact that Jack's misconduct in the form of dishonesty, willful disobedience and insubordination affected the orderly operation of the Sheriff's office. During the Commission hearing, the Sheriff testified that to be effective as a supervisor, a sergeant must have a reputation for honesty "[b]ecause they are models for the other employees and for all Sheriff's deputies and officers. We are examples to the public, and the public expects us to be honest and ethical." By the Sheriff's testimony it is clear Jack's dishonest conduct affected his ability to effectively lead as a supervisor, causing harm to the public service.

In addition, Jack's interference in the internal investigation of the gender bias claim placed the county at risk of liability, and "exposed the governmental entity to the prospect of litigation." (*County of Santa Clara v. Willis, supra*, 179 Cal.App.3d at p. 1252.) In particular, the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) provides

that employers take reasonable steps to prevent harassment from occurring. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1048 [6 Cal.Rptr.3d 441, 79 P.3d 556].) Here, Jack's willful disobedience of the Sheriff's order not to contact Holland during the pendency of the investigation into allegations of Jack's gender bias towards her exposed the county to liability under FEHA, because Jack was continuing to engage in harassment of an employee that had reported abuse.

Moreover, the Commission's decision in this case to reduce Jack's penalty is not supported *by its own findings*. When the Commission first made its order reinstating Jack, it made no findings in support of its decision, stating simply that "the preponderance of the evidence [does] not establish just cause of . . . Jack's demotion . . . ." Only after the Santa Cruz County Superior Court ordered the Commission to make findings did it do so. Those findings, that Jack made false statements, was insubordinate and was willfully disobedient, did not support a reduction of the penalty; rather, they provided a basis for the original demotion ordered by the Sheriff. The Commission provided no explanation why Jack's conduct did not mandate the demotion ordered by the Sheriff, and instead should require only a 30-day suspension.

■ Although case law is clear that the standard of review of Commission decisions is abuse of discretion, in circumstances such as this, where the Commission made specific findings that are inconsistent with its action in reducing the penalty, our review extends to a de novo comparison of the findings and the penalty such that if the two are inherently inconsistent, and it is not possible that the one could follow from the other, then error is shown. Here, the Commission's findings do not support its action. We find no reasonable mind could conclude, based on these findings, a reduction of Jack's penalty was warranted. While the Commission had discretion to reinstate Jack, and to reduce the penalty ordered by the Sheriff, that discretion had to be based on reason. The Commission's conduct in reducing the penalty here exceeds the bounds of reason. (*Skelly v. State Personnel Bd.*, *supra*, 15 Cal.3d at pp. 217–218.) While it would be within the Commission's province to measure the seriousness of the conduct, here presumably Jack's lies, it is undisputed that his lies were among the most serious a peace officer could utter. Jack's dishonest and disobedient conduct harmed the public service and was " 'incompatible with the public trust.' [Citation.]" (*Kolender v. San Diego County Civil Service Com., supra*, 132 Cal.App.4th at p. 721.)

Here, we find the Commission abused its discretion in reinstating Jack's sergeant rank, and reducing his penalty to a 30-day suspension.

## Disposition

The judgment denying the petition for a writ of mandate is reversed. The trial court is directed to enter a new and different order granting the writ as prayed.

Premo, J., and Elia, J., concurred.